345 So.2d 168 (1977)
Jane Porter MOON, Plaintiff and Appellee,
v.
Theodore L. MOON, Defendant and Appellant.
No. 5782.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearings Denied May 10, 1977.
Writs Refused July 1, 1977.
*169 Hunt, Godwin, Painter & Roddy by Fred R. Godwin, Lake Charles, for defendant and appellant.
Kimball, McLeod & Dow by Robert L. Dow, Lake Charles, for plaintiff and appellee.
Before CULPEPPER, FORET and STOKER, JJ.
CULPEPPER, Judge.
This is a suit by Mrs. Jane Porter Moon for a divorce from Col. Theodore L. Moon (USAF Ret.) on the grounds of separation for over one year without reconciliation following rendition of a judgment of separation in favor of Mrs. Moon on the grounds of Col. Moon's cruelty. Mrs. Moon also seeks alimony after divorce, child support, and reformation or supplementation of a post-separation community property settlement. The property settlement agreement did not mention Col. Moon's Air Force retirement benefits, and Mrs. Moon now seeks her share of these benefits.
The trial court rendered judgment granting the wife a divorce, alimony and child support. In addition, the judgment supplemented the community property settlement agreement by awarding the wife one-half of that portion of Col. Moon's Air Force *170 retirement pay constituting community property. The trial judge found the retirement pay was omitted from the property settlement agreement because of mutual oversight by the parties.
Col. Moon appealed only from those portions of the judgment granting his wife alimony, awarding her a portion of his Air Force retirement pay, and ordering him to pay all costs of court.
The substantial issues are: (1) May a husband and wife stipulate during separation proceedings that a judgment of separation based on the husband's fault will not be determinative of the issue of the wife's freedom from "fault" for the purpose of determining her entitlement to alimony after divorce under LSA-C.C. Article 160? More specifically, is such a stipulation prohibited by the decision of our Supreme Court in Fulmer v. Fulmer, 301 So.2d 622 (La.1974)? (2) If the wife obtains a judgment of separation on the basis of the husband's fault and later files a suit for divorce based on non-reconciliation after the separation, may the husband defend against the wife's claim for alimony after divorce by alleging and proving the wife committed adultery or other serious acts of fault after the judgment of separation was rendered? More specifically, does the decision of our Supreme Court in Fulmer v. Fulmer prevent litigation of the wife's post-separation fault in all cases where the wife has previously obtained a judgment of separation based on the husband's fault? (3) Did the trial court err in concluding the failure of the parties to expressly provide for partition of Col. Moon's Air Force retirement benefits in the community property settlement agreement was a mere "omission" within the meaning of LSA-C.C. Article 1308, which omission could be the subject of a "supplementary partition" of the community property under the terms of LSA-C.C. Article 1401?

FACTS
On February 1, 1974, Mrs. Moon filed a suit for separation on the grounds of Col. Moon's cruelty. Col. Moon denied Mrs. Moon's allegations of cruelty and reconvened for separation on the grounds of abandonment. Later, Col. Moon amended his answer to allege cruelty on the part of Mrs. Moon, urging mutual fault as a defense to the separation.
The separation suit was set for trial on June 6, 1974. On that date, Col. Moon attempted to amend his reconventional demand to include an action for divorce on the grounds of his wife's adultery. Allegedly, Col. Moon did not discover his wife's adultery until June 4, 1974. The trial court denied the husband's request to file the amendment concerning adultery, but reserved to Col. Moon the right to proceed thereafter, without prejudice, for a divorce on grounds of adultery.
Col. Moon chose not to oppose his wife's suit for a separation on the grounds of cruelty. Rather than litigating the issue of the wife's fault, the attorneys for both parties entered into a stipulation in open court on June 6, 1974, the terms of which are incorporated into the judgment of separation rendered by the trial court on that same date. The pertinent provision of the judgment of separation states:
"IT IS FURTHER ORDERED that this judgment is not determinative of the issue of Plaintiff's freedom from fault for purposes of eligibility for alimony after divorce under Article 160 of the Louisiana Civil Code as that issue has not been litigated in these proceedings, and this judgment shall not be the basis for a plea of Res Judicata or Estoppel by judgment in any future proceeding by Plaintiff wherein she seeks to obtain alimony after a final divorce under Article 160 of the Louisiana Civil Code."
On June 10, 1975 Mrs. Moon filed the present suit for a divorce based upon separation for over one year after the judgment of separation. Mrs. Moon later amended her petition to include demands for child custody, child support, alimony after divorce and reformation of the community property settlement.
Col. Moon denied all of his wife's allegations and specifically urged that she was *171 not entitled to alimony because she was not free from fault. In two supplemental answers and in a reconventional demand for divorce, Col. Moon averred that his wife was not free from fault because she committed adultery. The allegations of adultery are quite specific, stating the times, places and circumstances of several acts of adultery both before and after the judgment of separation on June 6, 1975. In response to Col. Moon's answer and reconventional demand, Mrs. Moon filed, as permitted by LSA-C.C. Article 964, a motion to strike Col. Moon's allegations of her fault. The trial court granted Mrs. Moon's motion to strike and refused to allow litigation of either pre-separation or post-separation fault.
The basis of the trial judge's ruling was that under Fulmer v. Fulmer, supra, Col. Moon could not allege either pre-separation or post-separation fault as a defense to Mrs. Moon's claim for alimony after divorce.

STIPULATION REGARDING LITIGATION OF FAULT
The first question is whether the husband and wife may stipulate that a determination of the husband's fault, made in a judgment of separation, will not be determinative of the wife's "freedom from fault" for purposes of determining her eligibility for alimony under Article 160?
Fulmer v. Fulmer, supra, did not involve a stipulation such as the one at issue here. However, in Trahan v. Trahan, 340 So.2d 676 (La.App. 4th Cir. 1976) the court considered a similar attempt to avoid by stipulation the holding in Fulmer. In Trahan, the stipulation was not entered into during the separation proceedings, as in the present case, but rather was entered during the subsequent divorce action by the wife on the grounds of living separate and apart without reconciliation for one year after the judgment of separation. The stipulation was made a part of the judgment of divorce and stated: "It is further ordered, adjudged and decreed that by consent of the parties herein, the question of fault between the parties is pretermitted at this time."
After the judgment of divorce was rendered in favor of Mrs. Trahan on April 15, 1974, Mr. Trahan filed on May 6, 1974 a "Petition To Determine Fault". The trial judge held the consent judgment pretermitting the question of fault effectively reserved the husband's right to have the question of fault reconsidered after the divorce judgment. Our brothers of the Fourth Circuit reversed, holding that under Fulmer v. Fulmer, supra, the stipulation was invalid. The appellate court stated: "But in this case, the litigants cannot require the courts to relitigate a matter that has been previously adjudicated. The purpose of ruling the litigants are entitled to one hearing on the question of preseparation fault is to achieve judicial economy." (Emphasis supplied) The court thus concluded that under Fulmer relitigation of pre-separation fault is barred, and the litigants cannot contract to alter the Supreme Court's pronouncement on this point. We agree with this holding by our brothers of the Fourth Circuit. However, we are careful to point out for purposes of clarity that the holdings in both Fulmer and in Trahan are restricted to pre-separation fault. In neither of these cases was the court concerned with post-separation fault.
We therefore hold in the present case that the trial judge correctly sustained Mrs. Moon's motion to strike all allegations of pre-separation fault on her part. However, for the reasons more fully explained hereinafter, we conclude the trial judge erred in striking Col. Moon's allegations as to post-separation fault.

POST-SEPARATION FAULT
If the wife obtains a judgment of separation on the basis of the husband's fault and later files a suit for divorce on the basis of non-reconciliation for the prescribed time after the separation, may the husband defend against the wife's claim for permanent alimony by alleging and proving the wife committed adultery or other serious fault subsequent to the judgment of separation? *172 This issue is squarely presented by the present case.
In order to receive alimony, the wife must not have been "at fault". La.C.C. Article 160. The word "fault" has been defined as "acts of commission or omission on the part of the wife violative of her marital duties and responsibilities, which constitute a contributing or proximate cause of the separation and continuous living separate and apart, the grounds for the divorce." Felger v. Doty, 217 La. 365, 46 So.2d 300 (1960). In Smith v. Smith, 216 So.2d 391 (La.App. 3rd Cir. 1967), we quoted the definition of "fault" from the Felger case, and added: "The essence of this definition is that fault is conduct which constitutes grounds for separation or divorce, other than mere living separate and apart for a specific period of time." (Emphasis added) Thus, under the definition of fault stated in the Smith case, it is clear that the wife's post-separation adultery, or other serious fault constituting grounds for divorce, may be urged as an affirmative defense to the wife's claim for alimony.
In Smith, we made it clear that the wife's fault may be urged as a defense to her claim for alimony even though the wife obtains the divorce. After discussing Article 160 (as amended by Act 1964, No. 48, Sec. 1), and the comments of the La. Law Inst. with reference to Article 160, we held in Smith: "The wife at fault should not recover alimony even though she obtains the divorce." In Smith, the wife had obtained a divorce based on the husband's adultery.
Before the Fulmer case, it is clear that the wife's post-separation fault could be raised as a defense to her claim for alimony after divorce. In our opinion, the Fulmer case did not change the law in this regard. We are supported in our conclusion by Webster v. Webster, 308 So.2d 302 (La. App. 1st Cir. 1975). In the Webster case, the wife obtained a judgment of separation based on the husband's fault. Thereafter, the husband obtained a judgment of divorce in a chancery court of the State of Arkansas. The judgment rendered by the Arkansas court was made executory in Louisiana, subject to a stipulation by the parties that the judgment of divorce would not affect the wife's right to alimony under Article 160 of our Civil Code. After discussing the Fulmer case at length, the court in Webster concluded:
"We interpret the foregoing, [i. e., the Fulmer case] to mean that once a wife's freedom from fault [is established] in a separation proceeding, the only issue concerning fault of the wife in a subsequent divorce proceeding is whether the wife has been guilty of fault subsequent to the decree of separation." (Emphasis added)
Thus, the Webster court recognized that even after the Fulmer case, the wife's post-separation fault may form the basis of a defense to her claim for permanent alimony.
A careful analysis of the Fulmer case reveals that it was intended to effect only the issue of relitigation of pre-separation fault, not post-separation fault. The initial question in this analysis is, what is the effect of a judgment of separation obtained by the wife on the basis of the husband's fault? The Fulmer court answered this question as follows: ". . . the sole effect of the separation judgment is a conclusive adjudication as to which spouse's pre-separation fault primarily caused the separation." 301 So.2d at 629. Nowhere in Fulmer does the court say the judicial determination of pre-separation fault bars the husband from defending his wife's claim for post-divorce alimony on the basis of her post-separation fault. In fact, the following language shows the Fulmer court was careful to limit the decision's application to pre-separation fault:
"As to the pre-separation fault, it should constitute a conclusive determination which equally bars re-litigation of the issue of fault, when alimony is sought under Article 160, whether the divorce is based either on La.R.S. 9301 or 9302." 301 So.2d at 629 (Emphasis added)
The only mention of "post-separation fault" in the Fulmer opinion appears in the following passage:

*173 "Thus, where a judicial separation is decreed as caused by the fault of one spouse or the other, such fault as judicially determined to be the cause of the separation is normally determinative of the issue of whether the husband or wife is or is not at fault, for purposes of deciding whether the wife is entitled to alimony under Article 160. Such a conclusion is, of course, not applicable if the divorce is sought for post-separation fault, such as adultery; for the sole effect of the separation judgment is a conclusive adjudication as to which spouse's pre-separation fault primarily caused the separation." 301 So.2d at 629 (Emphasis added)
Considering the Louisiana separation and divorce laws as a whole, we believe our holding is consistent with the intent of the legislature. The post-separation waiting period of LSA-R.S. 9:302 is designed principally to give the spouses a chance to reconcile their differences and resume their marriage. If serious post-separation fault were not a defense to the wife's claim for alimony after divorce, the intent of the legislature in providing the waiting period of LSA-R.S. 9:302 would be subverted. Adultery is a serious form of fault, and its occurrence after the judgment of separation would probably lessen the chances of a reconciliation.
Another probable effect of holding the wife's serious post-separation fault cannot be raised as a defense to her claim for permanent alimony in a suit by the wife for divorce one year after a judgment of separation would be to encourage suits by husbands for divorce on the grounds of the wife's post-separation fault. We do not think the law should force the husband to seek a divorce on the grounds of serious post-separation fault in order to avoid payment of alimony after divorce. Such a holding could encourage divorce and discourage reconciliation. With the possibility of alimony payments looming ahead, even a husband who desires a reconciliation and resumption of the marriage could be moved by economic considerations to seek a divorce on account of the wife's post-separation fault.
Our holding in this case does not contravene the considerations of judicial economy underlying the Fulmer decision. Fulmer was aimed at stopping re-litigation of pre-separation fault. It was not intended to prevent litigation of post-separation fault, where such litigation occurs in the course of the husband's defense against the wife's alimony claim. It would be incongruous, indeed, to hold that a judicial determination of the husband's pre-separation fault is determinative of the issue of the wife's post-separation fault.
Mrs. Moon argues that the decision of our Supreme Court in Tortorich v. Maestri, 146 La. 124, 83 So. 431 (1919) and our decision in Jones v. Floyd, 154 So.2d 604 (La.App. 3rd Cir. 1953) prevent the husband from raising the issue of her post-separation fault as a defense to her claim for permanent alimony. We do not agree. The Floyd case holds, and Col. Moon concedes, that after a suit for divorce under LSA-R.S. 9:302 has been filed by one spouse, a reconventional demand by the other spouse for a divorce on other grounds, including adultery, states no cause of action. The Jones decision is founded on the absolute statutory right of a spouse to obtain a divorce if he timely files suit for divorce based upon non-reconciliation.
In the Jones case, we explained that evidence of the husband's adultery, which the wife sought to introduce, was totally irrelevant to the husband's action for divorce based on LSA-R.S. 9:302. This statement is not in conflict with our holding in the present case. To understand why there is no conflict, the fundamental distinction between the nature of the actions for a divorce under LSA-R.S. 9:302 and the wife's claim for alimony after the divorce must be recognized. Evidence of the wife's fault, either before or after the judgment of separation, is irrelevant in an action for divorce under R.S. 9:302. Jones v. Floyd. Such a divorce will be granted regardless of the wife's fault. But if the wife makes a claim for permanent alimony in divorce proceedings *174 under R.S. 9:302, evidence of her post-separation fault is relevant. Post-separation fault is an affirmative defense to the wife's claim for post-divorce alimony in such a case.
Furthermore, we note that post-separation fault was not alleged as a defense to a claim for alimony in either the Jones case or the Tortorich case.
We conclude that the trial judge erred in sustaining Mrs. Moon's motion to strike the allegations of Col. Moon's answer urging Mrs. Moon's post-separation fault as a defense to her claim for alimony after divorce. The case must be remanded for trial of these issues.

THE COMMUNITY PROPERTY SETTLEMENT AGREEMENT
Having concluded that this case must be remanded to the trial court for a determination of the wife's post-separation fault for purposes of alimony under Article 160 of our Civil Code, we move now to the question of whether the trial court erred in supplementing the community property settlement by awarding the wife one-half of the community property portion of the husband's military retirement pay.
In Swope v. Mitchell, 324 So.2d 461 (La. App. 3rd Cir. 1975) we followed the jurisprudence of several other community property states in holding that United States military retirement pay is divisible as a community asset under certain circumstances. The portion of the retirement pay which is community property is expressed as a fraction, represented by the number of years the parties were married while the husband was on active military duty over the total number of years of military service.
Col. Moon entered military service on March 21, 1940. He married Mrs. Moon on June 13, 1954. He retired from the Air Force on June 30, 1964. The community was dissolved on February 1, 1974, and the judgment of separation was rendered on June 6, 1974.
Under the formula laid down in the Swope case, 10/24th of Col. Moon's retirement pay is community property. The numerator of this fraction, 10, represents the total number of years which the parties were married during the time that Col. Moon was in active military service. The denominator of the fraction, 24, represents the total number of years which Col. Moon was on active military duty. Mrs. Moon is entitled to one-half of the community property portion of the retirement benefits. Therefore, Mrs. Moon is entitled to 5/24th of the retirement benefits.
In the present case, the parties entered into a written community property settlement agreement about three months after the legal separation. Both parties were represented by counsel during the rather extensive negotiations preceding perfection of the property settlement agreement. Both parties were aware of Col. Moon's retirement pay, but both thought the retirement pay was Col. Moon's separate property. Neither party discussed the retirement pay with his attorney and the retirement pay was not mentioned during negotiations preceding the settlement. Considering these facts, the trial judge concluded that the failure to include the retirement pay in the settlement agreement was a "mere omission" within the meaning of Civil Code Article 1401. The trial court then ruled in favor of Mrs. Moon, supplementing the partition agreement by awarding her 5/24th of Col. Moon's retirement pay. As authority for his decision, the trial judge cited our decision in Langlinais v. David, 289 So.2d 343 (La.App. 3rd Cir. 1974). For the reasons which follow, we think the trial court committed no error in supplementing the community property settlement agreement.
The facts of the Langlinais case are very similar to those of the present case. In Langlinais, as in the present case, the husband and wife entered into a community property settlement agreement following their legal separation. The agreement in Langinlais specifically provided for a division of certain assets, but did not mention the husband's State Police retirement benefits. *175 The trial court in Langinlais noted that the wife knew of her husband's plan to retire before she entered the community property settlement agreement and concluded that she waived her claim to the retirement fund by failing to list it as an asset in the community property settlement agreement. We found manifest error in the trial court's conclusion, reasoning that the failure to mention the fund evidenced a "mutual oversight". We then held that the oversight concerning the retirement fund was a "mere omission" within the meaning of Civil Code Articles 1308 and 1401. Citing those two code articles as authority, we allowed a "supplementary partition" of the community property agreement. The wife was awarded her community share of the husband's State Police retirement benefits.
The trial court in the present case correctly concluded that the Langlinais case, and the codal provisions cited there are authority for a supplementary partition in the present case. The court committed no error in awarding Mrs. Moon 5/24th of Col. Moon's military retirement benefits.
Col. Moon concedes that 5/24th is the proper division of the retirement benefits, if we hold that the wife is entitled to her share of the community property portion of his U.S. Air Force retirement benefits.
The husband attempts to distinguish Langlinais on the grounds that the property settlement agreement in that case did not contain a residual disposition of all unlisted assets, while the property settlement in the present case does.
The settlement agreement in the present case is drafted as a conveyance from Mrs. Moon to Col. Moon of all community property except a specific list of assets to be retained by Mrs. Moon. One paragraph of the property settlement agreement conveys to Col. Moon:
"All movable property formerly belonging to the community of acquets and gains including all household furnishings, fixtures and appliances . . . [located at the family home] . . . but excepting the movable property formerly belonging to the community of acquets and gains which are specifically conveyed hereafter to JANE MOON, born Porter."
The agreement does not list the retirement benefits, an incorporeal movable belonging to the community, as one of the assets being conveyed to Jane Moon.
When considered out of context, the quoted portion of the settlement agreement might be considered a residual disposition broad enough to include Col. Moon's Air Force retirement benefits. We think, however, the parties did not intend the retirement provisions to be affected at all by the settlement agreement. The previously quoted language was, in our opinion, intended to cover only odds and ends of household furnishings and other personal property which the parties considered to be community property. Both parties testified they thought the pension was separate property. By mutual oversight, the parties simply omitted the pension from the list of community property to be divided or conveyed.
Having concluded the trial court did not err in supplementing the community property settlement agreement, we need not consider Mrs. Moon's alternative allegations that the agreement should be rescinded for error of fact and law and lesion.
The husband argues that our previous decision in Swope v. Mitchell, supra, which classifies military retirement benefits as community property under certain circumstances, is an unconstitutional application of our law in that (1) it violates the privileges and immunities provision of Article 4, Sec. 1 of the U.S. Constitution and (2) it violates the equal protection clause of the 14th Amendment of the U.S. Constitution. The husband cites no cases to support his argument, nor do we find any. The arguments are without merit.
The "privilege" which Col. Moon asserts is abridged is the right to receive the full amount of his U.S. Air Force retirement pay. First, this right is not the type of basic, fundamental right of citizenship protected by the privileges and immunities clause of the U.S. Constitution. U. S. v. Wheeler, 254 U.S. 281, 41 S.Ct. 133, 65 L.Ed. *176 270 (1920); the Slaughter House cases, 16 Wall (83 U.S.) 36, 21 L.Ed. 394 (1873). Second, the supremacy clause of the U.S. Constitution does not prevent a state from classifying military retirement benefits as community property. In Re Marriage of Fithian, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974), certiorari denied 419 U.S. 925, 95 S.Ct. 41, 42 L.Ed.2d 48.
Col. Moon's argument with respect to equal protection is that he would "receive less benefits from his Federally created rights than would other members of the class who are not subject to Louisiana law." No further elaboration is offered to support this contention.
In Louisiana, community property laws apply equally to all retired servicemen in situations similar to that of Col. Moon. Apparently, Col. Moon contends that he is denied equal protection because he is subject to the laws of a community property state, while other servicemen who retire elsewhere are not. The equal protection clause does not require comparison of the laws of the various states. All that is required is that similarly situated persons within one state receive equal treatment under its laws.

TAX LIABILITY ON RETIREMENT BENEFITS
Col. Moon argues the judgment of the trial court, which orders him to pay 5/24 th of the gross amount of his retirement pay to his wife, is in error because it places the entire tax burden on him. There is no merit in this argument. The wife, Mrs. Moon, is entitled by virtue of our community law to 5/24th of the gross amount of Col. Moon's Air Force retirement pay. Any dispute about the tax burden on the retirement benefits is between the parties and the taxing authorities. Taxation issues are not properly before us in the present divorce proceedings.

ASSESSMENT OF COSTS IN THE TRIAL COURT
Finally, Col. Moon contends that the trial court erred in assessing costs of the proceeding against him. We find no error in this assessment. The trial court did not abuse the discretion granted it by LSA-C.C.P. Article 1920.
For the reasons assigned, the judgment of the trial court granting Mrs. Moon alimony after divorce is reversed and the case is remanded to the district court for the limited purpose of allowing the husband to litigate the issue of his wife's post-separation fault for purposes of determining her eligibility for alimony under Article 160 of our Civil Code. Otherwise, than as reversed and remanded, the judgment appealed is affirmed. All costs of this appeal are assessed against Mrs. Moon.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
STOKER, J., concurs in part, and dissents in part and assigns written reasons.
STOKER, Judge, concurring in part and dissenting in part:
I am in agreement with all points of the majority opinion except that portion pertaining to the foreclosing of litigation of pre-separation fault where there has been a stipulation reserving that issue. I feel that the stipulation entered into in this case, recognized by the separation judgment with specific reservation in the judgment, should be honored. I do not think Fulmer v. Fulmer, 301 So.2d 622 (1974), necessarily prohibits such stipulations and there are excellent policy reasons for permitting them. Trahan v. Trahan, 340 So.2d 676 (La.App. 4th Cir. 1976), is distinguishable for the reason that the stipulation in Trahan was made when the divorce action came up, and not at the time of the separation, as was the case here. Therefore, I concur in the majority opinion except as noted here, and as to the issue noted, I respectfully dissent.